IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PLAN ADMINISTRATOR, on behalf of itself, as Named Fiduciary, and the LIMBACH HOLDINGS INC. PROFIT SHARING RETIREMENT PLAN,<br><br>        Plaintiff,<br>v.<br><br>FRED KIENAST,<br><br>        Defendant. | 2:06-cv-1529 |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are the MOTION FOR SUMMARY JUDGMENT *(Document No. 10),* with brief in support, filed by Defendant Fred Kienast and the MOTION FOR SUMMARY JUDGMENT *(Document No. 14),* with brief in support, filed by Plaintiffs. The motions have been thoroughly briefed and are ripe for disposition.

Factual and Procedural Background

The facts in this ERISA case are straight-forward. Defendant Fred Kienast was employed by Limbach Facility Services, Inc. ("Limbach") for fifty-two years, until his retirement from his position as Executive Vice President and Chief Executive Officer of the Pittsburgh branch in December 2002. Kienast was a participant in an ERISA defined contribution plan, the Limbach Holdings, Inc. Profit Sharing Retirement Plan (the "Plan"). In 2003, Kienast requested a distribution of his account balance in the Plan, which he anticipated would be approximately $700,000. On July 2, 2003, the Plan disbursed $312,595.67 to Kienast, which he rolled over into an Individual Retirement Account ("IRA") which het had established with F&G Life. Kienast

directed that those proceeds be used to purchase an annuity. In 2004, Kienast again requested a distribution of his account balance from the Plan. Due to an administrative error, the Plan approved this second request as well. On October 7, 2004, the Plan disbursed $218,816.97, which was rolled over into an IRA which Kienast had established with Capital Bank & Trust. The assets in the Capital Bank & Trust IRA were initially invested in six different American Funds mutual funds, but before the end of 2004, Kienast consolidated the investments in his Capital Bank & Trust IRA into a single mutual fund, the Cash Management Trust of America. In February 2005, Kienast added $26,530.53 to the Capital Bank & Trust IRA by rollover from another separate IRA. In the fall of 2004, while responding to another inquiry from Kienast, the Plan discovered that it had erroneously made two distributions to Kienast and requested that he return the overpayment. Kienast disregarded the Plan's request.

Limbach was a subsidiary of Enron Corporation, and due to the failure of Enron, accounts of the Plan were not reconciled until Hewitt Associates LLC ("Hewitt") completed that task in October 2006. During Hewitt's reconciliation, in addition to the second erroneous distribution in 2004, it was determined that Kienast had been overpaid in the July 2003 distribution by $12,248.08. Thus, Plaintiffs contend that Kienast has been overpaid a total sum of $231.065.05. Kienast admits having received the distributions from the Plan, but he disputes, legally, that the distributions are overpayments.

Plaintiffs seek equitable relief to recover the overpayment under two distinct theories. The Plan Administrator, in its role as a fiduciary, seeks recovery pursuant to 29 U.S.C. § 502(a)(3)(B). In the alternative, the Plan, in its own right, seeks to proceed under federal common law, pursuant to *Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d

1176 (3d Cir. 1991). Defendant contends that Plaintiffs' claims are not cognizable under the statutory text of ERISA or federal common law.

Standard of Review

>Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:
>
>[Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

>The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the

district court weigh the evidence.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230.  When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

In *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204, 209 (2002), the United States Supreme Court observed that ERISA was a comprehensive statute enacted after a decade of study and instructed courts to be "reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text."  Thus, before considering whether Plaintiffs may proceed under federal common law, the Court must consider whether statutory relief is available under ERISA.  *See UNUM Life Ins. Co. of America v. Grourke*, 406 F. Supp.2d 524, 530 (M.D. Pa. 2005).

1.      The Statutory Claim Pursuant to Section 1132(a)(3)(B)

ERISA § 1132(a)(3)(B) provides that a civil action may be brought:

**(3) by a participant, beneficiary, or fiduciary .... (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;**

As an initial matter, it is clear that only a "participant, beneficiary or fiduciary" may pursue a civil action under this section. Therefore, the Plan itself does not have an avenue for relief under this provision of the statute.

Turning to the claim of the Plan Administrator, the first question is whether it, as a fiduciary, is seeking to obtain "equitable" relief. In *Knudson*, the Supreme Court distinguished between legal and equitable restitution. A claim is considered to be "legal" when a plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he may be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." 534 U.S. at 213. On the other hand, a plaintiff may seek "restitution in equity, ordinarily in the form of a constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* The relief sought in this case is of a type that is typically available in equity, *id.* at 210, and falls within the *Knudson* definition of equitable restitution. The Plan Administrator seeks to impose a constructive trust or equitable lien on the two specific overpayments of funds that were mistakenly conveyed to Kienast and have been traced to Kienast's IRAs at F&G and Capital Bank & Trust.[1] The amounts of the

---

[1] Defendant's Statement of Facts avers that the assets in the Capital Bank & Trust IRA are invested in the Cash Management Trust of America mutual fund managed by American Funds.

mistaken overpayments are known. Unlike the situation in *Knudson*, there is no obvious action "at law." The property belonging to the Plan can easily be traced to the IRAs within Kienast's possession and control. Defendant cannot defeat the Administrator's right to recovery by merely intermingling the Plan funds with other money in his account. The IRAs remain within Kienast's possession irrespective of a beneficiary designation. As Plaintiffs aptly point out, beneficiaries had similarly been designated during the time that the funds were maintained in the Plan. The dispositive fact is that Kienast has control over the IRAs. In summary, the Plan Administrator seeks equitable relief that is statutorily available under ERISA.

The final step in the statutory analysis is whether the Plaintiff is seeking to enforce the terms of the Plan. Here, Section 2.030(l) of the Plan explictly authorizes the Administrator to take appropriate action to correct administrative errors, including "recovery of benefits paid by mistake." Alternatively, the Administrator is also seeking to enforce terms and conditions of the Plan regarding distributions. There is no material dispute of fact that Kienast obtained an incorrect double payout. Thus, this element of the statutory language is met.

Defendant summarizes the relevant standard for an employer to recover employee benefits under Section 1132(a)(3) as follows: (1) a provision of the Plan requires the party to repay benefits; (2) the benefits are specifically identifiable; and (3) the benefits are in the party's possession. Plaintiffs accept this summary of the law. For the reasons set forth above, this standard is met and the Plan Administrator is entitled to relief pursuant to Section 1132(a)(3).

    2.    Federal Common Law Claim Pursuant to *Luby*

As Plaintiffs accurately point out, the only precondition to a federal common law claim

6

for equitable restitution is the lack of a statutory remedy under ERISA. *Luby*, 944 F.2d at 1186. The Plan itself cannot proceed under Section 1132(a)(3), and therefore, the federal common law remedy is available to it, particularly if Kienast's arguments regarding the Plan Administrator's ability to proceed under ERISA were to be accepted and the plan fiduciary lacked a statutory remedy. As explained in *Luby*, Congress intended federal courts to fashion a comon-law remedy that would enable employers "to recover mistakenly paid pension fund contributions" to prevent unjust enrichment. *Id.* Such federal common law restitution "should be used to fill in interstices of ERISA and further the purposes of ERISA." *Id.* The holding in *Luby* that an ERISA fund itself has an equitable remedy to recover mistaken payments has not been overruled and remains good law. Such restitution would further the goals of ERISA and safeguard the funds set aside under the plan for valid beneficiaries. *Id.* "Restitution of a mistaken payment is permitted even if the payment was caused by the negligence of the party seeking restitution." *Id.* at 1186-87. The analysis in *Luby* is completely applicable to this case, and provides the Plan with an equitable remedy to recover the mistaken overpayment to Kienast.[2]

In summary, the merits of this case – factual, legal and equitable – weigh strongly in favor of Plaintiffs. Even if Kienast originally anticipated that his retirement payout would be higher, it was clear, at least after the reconciliation performed by Hewitt in late 2006, that he had wrongfully obtained a windfall of funds that rightfully belong to his fellow plan participants. It certainly promotes the ERISA goals of protecting the interests of Plan members and their beneficiaries, *see id.* at 1187, to require Kienast to return the overpayment. For the reasons set

---

[2] The Court does not reach the question of whether the Plan Administrator, as opposed to the Plan itself, could proceed under federal common law to the extent that the Administrator, as a fiduciary, is unable to obtain relief under the statutory text of ERISA.

forth above, the Plaintiffs have distinct and overlapping remedies under the statute and federal common law to accomplish this equitable restitution.

3.  Counsel Fees

Plaintiffs seek an award of counsel fees. Defendants argue that an award is not justified under the five-factor test in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983): (1) the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award; (3) the deterrent effect; (4) the benefit conferred on plan members as a whole; and (5) the relative merits of the parties' positions. Plaintiffs have not yet briefed this issue. Plaintiffs may file a fee petition and supporting brief on or before February 12, 2008. If a fee petition is filed, Defendant shall file a response and brief on or before March 3, 2008.

In accordance with the foregoing, the MOTION FOR SUMMARY JUDGMENT *(Document No. 10)* filed by Defendant Fred Kienast is **DENIED** and the MOTION FOR SUMMARY JUDGMENT *(Document No. 14)* filed by Plaintiffs is **GRANTED**.

Defendant shall forthwith direct the custodians of his Individual Retirement Accounts to return to the Limbach Holdings, Inc. Profit Sharing Retirement Plan the total sum of $231,065.05, plus actual earnings thereon from and since their initial receipt by Kienast, and shall execute any document required to effectuate such transaction. Defendant shall provide Plaintiffs with a calculation of the actual amounts earned. The Court will take the issue of

counsel fees under advisement pending further submissions by the parties.

SO ORDERED this 23rd day of January, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge


cc: Daniel E. Wille, Esquire
Email: dwille@reedsmith.com
Kristen E. Belz, Esquire
Email: kbelz@reedsmith.com

Jason Mettley, Esquire
Email: jm@jpilaw.com