# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PLAN ADMINISTRATOR, on behalf of itself, as Named Fiduciary, and the LIMBACH HOLDINGS INC. PROFIT SHARING RETIREMENT PLAN, | )<br>)<br>) 2:06-cv-1529<br>)<br>) |
| Plaintiff, | ) |
| v. | ) |
| FRED KIENAST, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is the PETITION FOR ATTORNEY FEES *(Document No. 24),* with brief and exhibits in support, filed by Plaintiffs. Defendant Fred Kienast has filed a response, appendix and brief in opposition (*Document Nos. 27-29),* and Plaintiffs have filed a reply brief (*Document No.* 31). The matter is ripe for disposition.

Factual and Procedural Background

The facts in this ERISA case are straight-forward. Defendant Fred Kienast was employed by Limbach Facility Services, Inc. ("Limbach") for fifty-two years, until his retirement from his position as Executive Vice President and Chief Executive Officer of the Pittsburgh branch in December 2002. Kienast was a participant in an ERISA defined contribution plan, the Limbach Holdings, Inc. Profit Sharing Retirement Plan (the "Plan"). In 2003, Kienast requested a distribution of his account balance in the Plan, which he anticipated would be approximately $700,000. On July 2, 2003, the Plan disbursed $312,595.67 to Kienast. In 2004, Kienast again requested a distribution of his account balance from the Plan. Due to an administrative error, the

Plan approved this second request as well and disbursed an additional $218,816.97 to Kienast. In the fall of 2004, while responding to another inquiry from Kienast, the Plan discovered that it had erroneously made two distributions to Kienast and requested that he return the overpayment. Kienast ignored or denied the Plan's request, which triggered this litigation. On January 23, 2008, the Court granted Plaintiffs' Motion for Summary Judgment, commenting:

> In summary, the merits of this case – factual, legal and equitable – weigh strongly in favor of Plaintiffs. Even if Kienast originally anticipated that his retirement payout would be higher, it was clear, at least after the reconciliation performed by Hewitt in late 2006, that he had wrongfully obtained a windfall of funds that rightfully belong to his fellow plan participants. It certainly promotes the ERISA goals of protecting the interests of Plan members and their beneficiaries, *see id.* at 1187, to require Kienast to return the overpayment.

Discussion

Plaintiffs, as prevailing parties, seek an award of counsel fees and costs. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action." 29 U.S.C. § 1132(g)(1). To guide a district court in the exercise of its discretion in connection with such fee petitions, the United States Court of Appeals for the Third Circuit has established a five-factor test that must be considered:

(1) the offending party's culpability or bad faith;

(2) the ability of the offending party to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending party;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' positions.

*McPherson v. Employees' Pension Plan of American Re-Insurance Co.*, 33 F.3d 253, 254 (3d

Cir. 1994) (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983). There is no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances. *Id.* A district court, when ruling on an ERISA fee petition, should articulate its analysis and conclusions on each of the *Ursic* factors. Defendant contends that all five *Ursic* factors weigh in favor of denying the fee petition and also contests the amount of fees claimed by Plaintiffs. The Court will address these arguments seriatim.

*Ursic* Factors

    1.    Offending Party's Culpability

In *McPherson*, the Court explained that a party is not culpable merely for taking a litigation position that did not prevail. On the other hand, culpability does not require a showing of bad faith. The Court defined the applicable standard as follows:

> A losing party may be culpable, however, without having acted with an ulterior motive. In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose."

33 F.3d at 256-57 (quoting <u>Black's Law Dictionary</u> (6th ed. 1990)).

This factor weighs in favor of an award of counsel fees. Kienast asked for, and received, a pension account balance payout twice. At some point, despite his skepticism regarding the specific account balance amount(s), it became clear that he had "double-dipped" and had through inadvertent mistake received far more than his fair share of the proceeds of the Plan. Nevertheless, he persisted in his refusal to honor Plaintiffs' requests to repay the erroneous

3

overpayment.

2. Ability To Pay

There is no direct evidence regarding Kienast's current financial ability to pay an award of counsel fees. However, there is sufficient evidence in the record regarding Kienast's financial condition in the recent past. The Plan disbursed over $531,000 to Kienast in 2003 and 2004. This Court has ordered repayment of approximately $231,000, a difference of $300,000. As of March 2007, Kienast had over $577,000 in an IRA. Moreover, the record reflects that Kienast worked for fifty-two years and at the time of his retirement he was Executive Vice President and Chief Executive Officer, with annual compensation well over $100,000. The Court is not persuaded by Kienast's unsupported suggestion that the cost of his legal defense renders him unable to pay an award of counsel fees. Kienast does not deny that he has significant financial assets, but rather contends that Plaintiffs could not *execute* on those assets because the vast majority are owned jointly with his wife or are in § 529 Savings Plans for the benefit of his grandchildren.[1] The focus of the present inquiry, however, is simply on a party's ability to satisfy an award of counsel fees and Kienast has the ability to pay. The Court finds that this factor weighs in favor of Plaintiffs.

3. Deterrent Effect

In *McPherson*, the Court of Appeals explained that "it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct." *Id.* at

---

[1] Kienast appears to not appreciate the effect of his actions on the other Plan participants or their grandchildren.

258. In this case, it became factually clear that Kienast had received a windfall. Nevertheless, he steadfastly refused repeated requests to return the overpayment and literally forced Plaintiffs to resort to litigation. Such conduct should be deterred. Recipients of mistaken overpayments should be encouraged to promptly and voluntarily repay the money. The other Plan participants should not bear the burden, directly or indirectly, of Kienast's intransigence. This factor weighs strongly in favor of Plaintiffs.

  4.  Benefit Conferred on Plan Members

The counsel fees incurred by Plaintiffs to obtain the judgment in this case will be borne by Kienast or, ultimately, by the other Plan participants. The Court has virtually no difficulty in concluding that the ultimate burden of this cost should be borne by Kienast. An award of counsel fees in this case would merely restore the other Plan participants to the position they would have occupied had Kienast simply returned the mistaken overpayment. If counsel fees are not awarded, the Plan, and ultimately, the other participants would suffer a net loss.

Defendant argues that no such loss will occur because Section 2.070 of the Plan requires EFS Corporate Services, Inc. ("EFS") to indemnify the Plan administrator for legal expenses. This position is legally dubious. As Plaintiffs correctly point out, Section 2.070 exempts "a proceeding brought by the Employer to enforce the terms of the Plan and/or the Trust Agreement" and this exemption arguably applies to the facts of this case.[2] More fundamentally, however, regardless of whether the "Plan" or another corporate entity such as EFS makes the actual payment, a failure to award counsel fees would enable Kienast to avoid the significant financial consequences which his wrongful actions imposed upon Plaintiffs. This factor weighs

---

[2]The Court does not decide this issue.

in favor of Plaintiffs.

5. Relative Merits

This factor is not as one-sided as the foregoing discussion may reflect. Although Kienast was undoubtedly wrong to keep the overpayment as a matter of fact, his legal arguments were well-reasoned and based upon a plausible interpretation of the controlling cases. As Kienast points out, the case law in this area is unsettled. Nevertheless, the essence of Kienast's position was that he could rely on legal technicalities to avoid repaying a mistakenly paid windfall. The Plaintiffs' position was based on a much more elementary and fundamental principle – "you got more than your fair share, so you have to give it back." The Court has no difficulty determining that this factor weighs heavily in favor of Plaintiffs.

Accordingly, upon consideration and application of the *Ursic* factors, the Court finds that Plaintiffs are entitled to recover an award of counsel fees and costs. The Court turns now to the amount of such an award.

Lodestar Calculation Disputes

The Court must determine a reasonable counsel fee for the prevailing party. As a starting point, the lodestar rate is calculated by multiplying a reasonable hourly rate by the reasonable number of hours expended. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Once the lodestar amount has been calculated, a court has discretion to adjust the fee up or down, based on a variety of factors. *United Auto Workers Local 259 Social Sec. Dept. v. Metro Auto Center*, 501 F.3d 283, 292 (3d Cir. 2007) (discussing factors)

The burden to establish reasonableness is on Plaintiffs. *Rode,* 892 F.2d at 1183.

Plaintiffs seek an award of counsel fees in the amount of $238,815.00 plus costs of $1,882.26, for a total of $240,697.26. To put this figure in context, the total amount of the overpayment made by the Plan to Kienast was $231,065.05.[3] Defendant contends that the fees requested by Plaintiffs are unsubstantiated and unreasonable. Specifically, Kienast challenges the claimed hourly rate, and contests the number of hours claimed for various tasks. The Court will address these contentions seriatim.

    1.    Hourly Rate

A reasonable hourly rate is to be calculated pursuant to the "prevailing market rate" in the "relevant community." This circuit follows the "forum rate rule," in which the relevant community is generally the forum in which the suit was filed. *Interfaith Community Organization v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703-05 (3d Cir. 2005); *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1187 (3d Cir. 1995). The relevant rate is to be calculated at the time of the fee petition, rather than the rate at the time the services were actually performed. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).[4] The Court must base its decision on the record, rather than a generalized sense of what is customary or proper. *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996). The rate should take into account prevailing counsel's skill and experience, the nature and complexity of the matter at issue, and should be evaluated with reference to the rates charged by comparable practitioners in the

---

    [3]In *United Auto Workers*, the Court held that proportionality is not a "reasonableness" factor.

    [4]This rule compensates for the delay in repayment. The Court notes that the rates of counsel for Plaintiffs rose much faster than the rate of inflation. For example, John LeBlond's hourly rate ***increased*** by $150 per hour between 2005 and 2008. LeBlond Declaration at ¶ 6.

community. *Rode*, 892 F.2d at 1183. A reasonable fee is sufficient to attract competent counsel, but does not produce a windfall for the attorneys. *Pub. Interest Research Group*, 51 F.3d at 1185. Routine tasks performed by senior partners at large firms should not be billed at their usual rates. *Ursic*, 719 F.2d at 677 (analogizing that Michaelangelo should not charge Sistine Chapel rates for painting a farmer's barn).

A three-step, burden-shifting framework is followed. First, the prevailing party must establish a prima facie case by producing sufficient evidence of that which constitutes a reasonable market rate for the essential character and complexity of the services rendered. *Lanni*, 259 F.3d at 149. If a prima facie case has been established, the opposing party then bears the burden of producing record evidence to contest this rate. *Id.* Finally, if the reasonable market rate is in dispute, a hearing must be conducted. *Id.*[5]

To satisfy the prima facie case requirement, the prevailing party must demonstrate that its requested rates are the prevailing rates in the community. *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence- *in addition to the attorney's own affidavits* -that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 225 n.2 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (emphasis added in *Smith*). If a party fails to meet its burden to demonstrate a prima facie case that the requested rates were the prevailing rates in the community, "the district court must exercise its

---

[5]*But see Blum v. Witco*, 829 F.2d 367, 377 (3d Cir. 1987) (holding that a hearing is only necessary if needed to decide disputed questions of fact).

discretion in fixing a reasonable hourly rate." *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996).

The record in this case reflects a vast disparity in rate structures. Plaintiffs have submitted the Declaration of John F. LeBlond, the lead attorney at Reed Smith who represented Plaintiffs in this matter. Exhibit D sets forth the following rate structure and number of hours worked on this case:

| Timekeeper | # Hours | 2008 Rate |
|---|---|---|
| John LeBlond, Counsel | 160.3 | $660 per hour |
| Daniel Wille, Partner | 171.7 | $565 per hour |
| Kristen Belz Ornato, Sr. Associate | 66.6 | $490 per hour |
| Kelly Lamanna, Associate | 5.7 | $320 per hour |
| Carl Reisacher, Counsel | 3.1 | $520 per hour |
| Sharon Ament, Paralegal | 0.2 | $180 per hour |

Biographies of each Reed Smith attorney were provided. Plaintiffs also submitted a comprehensive Litigation Fee & Cost Detail report. However, Plaintiffs have not submitted any supporting affidavits to show the rates charged by other attorneys for comparable work in the relevant legal community. *See Smith, Blum* (reasonableness showing must rest on more than attorney's own statements).

In response, Defendant submitted affidavits from two experienced attorneys who practice comparable law in the relevant Pittsburgh legal community, Howard Grossinger and Marianne Oliver. Grossinger has practiced employee benefits law for 34 years and his rate charged is $195 per hour to the ERISA-governed employee benefits plans which he represents. Oliver has been practicing employee benefits law for 21 years and her rate charged is $125 per hour for her legal

services and $20 per hour for paralegal work.

Plaintiffs have not submitted any evidence to rebut the affidavits presented by Defendant regarding the prevailing rate in the relevant community. On the contrary, Plaintiffs affirmatively represented in their Reply Brief that they "have no intention of disparaging either Howard Grossinger or Maryanne Oliver." Reply Brief at 4. Instead, Plaintiffs simply argue that their attorneys' practice involves "highly sophisticated benefits work" and that their fees are competitive with those charged by Morgan, Lewis & Bockius LLP and Kirpatrick & Lockhart Preston Gates Ellis LLP. *Id.*[6] As noted above, this Court must rely on the existing factual record in making a fee award.

In this case, Plaintiffs have failed to establish their prima facie case, as the only evidence submitted regarding the prevailing rate in the local legal community was the self-serving declaration from Plaintiffs' lead counsel. The Supreme Court in *Blum* and the Court of Appeals for the Third Circuit in *Smith* have clearly held that such evidence is not sufficient. Thus, the burden-shifting approach is not triggered and a hearing is not necessary. Because Plaintiffs failed to meet their prima facie burden, the Court must exercise its discretion to determine a reasonable rate. *Washington*, 89 F.3d at 1036.

Defendant produced sufficient record evidence to establish the reasonable prevailing rate in the local legal community by submitting the affidavits of Grossinger and Oliver. The hourly rates, competence and experience of these local employee benefit lawyers is unchallenged. The Court concludes, on this record, that the reasonable prevailing hourly rate in the local community

---

[6]The Court need not reach or decide the question of whether the rates of these global law firms are representative of the local legal community.

for comparable legal services is $125-$195 per hour.

In the exercise of its discretion, the Court will use the higher reasonable hourly rate of $195 per hour in calculating the lodestar for this case. The Court is aware that even first-year associates at Reed Smith are billed at substantially higher hourly rates. The Court also observes that in this matter, the vast majority of time was billed by the senior members of the litigation team, LeBlond and Wille.[7] In summary, the lodestar calculation will utilize a rate of $195/hour.

2.      Hours Claimed

District courts are instructed to conduct a "thorough and searching analysis" of the fee application. *Interfaith Community*, 426 F.3d at 703 n.5. A prevailing party may only recover for time reasonably expended and the Court must exclude time that was excessive, redundant or unnecessary. *Id.* at 711. As the hourly rate demanded goes up, there should be a corresponding decrease in the amount of time required to accomplish necessary tasks, due to counsel's experience and expertise. *Ursic*, 719 F.2d at 677. Time that would not be billed to a client cannot be imposed on an adversary. *Windall*, 51 F.3d at 1188. The Court cannot reduce an award sua sponte. Rather, the opposing party must make specific objections. *Interfaith Community*, 426 F.3d at 711. Once the opposing party does so, the burden shifts back to the party seeking fees to justify the size of its request. *Id.*

In this case, Kienast has raised eight specific objections. Plaintiffs have responded to each objection. The Court will address each issue seriatim.

---

[7]Plaintiffs have provided no explanation as to why tasks such as research and briefing could not have been delegated. *See Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).

a.  *8.35 hours for a corporate disclosure statement*

This objection is overruled. As both parties have recognized, the Plan at issue was related to the collapse of the Enron empire, and it was appropriate for counsel to research that complex corporate structure for the purpose of this filing.

b.  *31.35 hours to prevent American Funds from making distributions*

Counsel attempted to secure a temporary restraining order or to obtain Kienast's consent that American Funds would not make a distribution from the account. Kienast contends that this work was unnecessary because no legal action or consent decree was filed, Kienast did in fact receive distributions from the account, and nothing tangible came of this work. Plaintiffs do not dispute Kienast's contention. Rather, in response, they merely argue that Plaintiffs "had to do what was necessary to prevent its [sic] assets from being spent..." Thus, it appears that Plaintiffs researched such relief but did not obtain it. The most apt analogy is to hours invested in litigating a claim, "distinct in all respects," that was ultimately unsuccessful. In *Hensley*, 461 U.S. at 440, and *Washington*, 89 F.3d at 1044, district courts considering the amount of a reasonable fee are instructed to exclude hours spent on an unsuccessful claim. This objection is sustained and the hours awarded will be reduced accordingly.

c.  *2.7 hours regarding an escrow agreement*

Kienast contends that defense counsel proposed an escrow agreement as a means of repaying the principal portion of the overpayment, but that Plaintiffs' counsel rejected the proposal. Plaintiffs respond that the work was necessary to understand the offer of compromise and to communicate it to the clients. The Court agrees with Plaintiffs and this objection is overruled.

d.  *2 hours of research about Enron*

Kienast argues that this work was unnecessary. Plaintiffs respond that it was Kienast who attempted to make Enron's collapse an issue in the litigation, which therefore necessitated this work. The Court agrees with Plaintiffs and this objection is overruled.

e.  *7.7 hours of work preparing for a Rule 16 conference*

The docket reflects that the conference at issue was the initial case managment/scheduling conference. Kienast points out that the conference consisted of a 5-10 minute telephone call. Plaintiffs contend that the length of the call bears little relationship to the time needed to prepare for it. They further argue, more generally, that the early investment of time to plan for the case ultimately reduced fees. The Court agrees with Plaintiffs' general observation regarding the necessity for and value of case planning. However, it also agrees with Defendant that 7.7 hours – the equivalent of an entire day -- was excessive to prepare for the initial scheduling conference in this case. The Court will sustain the objection in part and reduce the number of hours awarded by 3.7 hours.

f.  *71.3 hours to prepare affidavits*

Kienast objects to the time spent to prepare the affidavits of Robert Jones, Erik Seikman and Mark Hoogstraten in support of the summary judgment motion. Defendant argues that the time spent on Jones' affidavit is cumulative, since Jones was deposed. Defendant argues that the other two affidavits are so short, 19 and 11 paragraphs respectively, that the time spent was excessive. Plaintiffs point out that these three affidavits comprise the entirety of the factual record and that the time charged includes "preparation and organization of the material needed

for the affidavit into a concise format" and "research and verification of underlying facts."[8]

Although the hours claimed appear to be toward the high end of the range of reasonableness, especially given the professed expertise and experience of the attorneys involved, Plaintiffs are correct that the affidavits were successful in establishing the material facts, thus avoiding the necessity for trial. The Court will overrule this objection.

      g.     *59.25 hours for a brief in opposition to Kienast's SJ Motion*

Kienast points out that the brief in question (Document No. 19) contains eight pages of substantive analysis. Plaintiffs respond that they "take their roles as officers of the court seriously" and that the cases cited by Kienast "had to be carefully parsed and explained." The Court notes that this case involved cross-motions for summary judgment. Thus, Plaintiffs had already presented their primary arguments to the Court and the brief in question was limited to distinguishing the cases cited by Kienast. It is not reasonable to award 59.25 hours – equivalent to working full-time for nearly a week and a half – for this task. Accordingly, this objection is sustained in part and the hours awarded will be reduced by 19.25.

      h.     *15.95 hours to prepare a surrreply brief*

Kienast contends that all time spent on the surreply brief (Document No. 21) was unnecessary because Plaintiffs failed to seek leave to file it, in violation of Local Rule 56.1 and this Court's published Practices and Procedures. Plaintiffs do not respond to the substance of this argument. The Court agrees with Kienast. Counsel should not expect to file briefs without

---

[8] The Court notes that many of these tasks likely could have been more efficiently performed by members of the litigation team with lower billing rates. However, given the conclusion above that $195 is an appropriate rate, a further reduction will not be made on this basis.

leave of court and then seek to impose the related costs on the opposing party. This objection is sustained and the hours awarded will be reduced accordingly.

      3.      Lodestar Calculation

Plaintiffs submitted a petition in which 407.4 hours of attorney time is claimed. As a result of Defendant's specific objections to the time spent on various tasks, the Court has reduced Plaintiffs' claim by 70.25 hours. Thus, Plaintiffs will be awarded counsel fees based on 337.15 hours, which the Court finds to be reasonable. As explained above, the Court will use a flat hourly rate of $195 per hour.[9] Thus, the lodestar calculation results in a counsel fee award of $65,744.25. After adding $36 for paralegal time and costs of $1,882.26, which Defendant did not contest, Plaintiffs would be entitled to an award of $67,662.51.

      4.      Evaluation of Other Factors/Adjustment of Lodestar

The Court concludes that given the entirety of the circumstances of this case, the lodestar award is reasonable. The work performed by Plaintiffs' attorneys was professional, competent and resulted in a very favorable result. It is undisputed on this record that the lawyers were highly skilled and experienced. However, this was a relatively straight-forward litigation matter in which the right to recover the overpayment was compelling. This was not the type of "highly sophisticated benefits work" for which lead counsel is apparently able to command up to $660 per hour. Even after the reductions set forth above, the fee award remains substantial and will

---

[9]Because Plaintiffs seek recompense for only 0.2 hours of paralegal time, the applicable hourly rate has almost no effect on the ultimate award. The Court will use the claimed rate of $180 per hour, for a total of $36.

serve the deterrent effect evaluated in the *Ursic* factors.

Accordingly, Plaintiffs PETITION FOR ATTORNEY FEES *(Document No. 24)* is

**GRANTED IN PART AND DENIED IN PART**. Defendant shall pay counsel fees and costs to

the Plaintiffs in the total amount of $67,662.51.

SO ORDERED this 2nd day of May, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge


cc: Daniel E. Wille, Esquire
Email: dwille@reedsmith.com
Kristen E. Belz, Esquire
Email: kbelz@reedsmith.com

Jason Mettley, Esquire
Email: jm@jpilaw.com